

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JAN - 8 2016

CLERK, U.S. DISTRICT COURT

By_____
Deputy

IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DONNA M. DAY, §
    PLAINTIFF, §
§
§
v. § CIVIL ACTION NO. § 4:15-CV-102-A
§
CAROLYN COLVIN, §
ACTING COMMISSIONER OF §
SOCIAL SECURITY, §
    DEFENDANT. §

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

Plaintiff Donna Marie Day ("Day") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On November 30,

2012, Day protectively filed an application for DIB, alleging her disability began on June 25,

2011. (Tr. 10, 128-32.) After her application for DIB was denied initially and upon

reconsideration, Day, on July 9, 2013, requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 10, 73-86.) The ALJ held a hearing on May 5, 2014 and issued an unfavorable decision on August 12, 2014. (Tr. 10-20, 24-45.) On December 16, 2014, the Appeals Council denied Day's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-5.) Day subsequently filed this civil action seeking review of the ALJ's decision.

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520.

First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the

2

claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither

3

reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III.    ISSUES

In her brief, Day presents the following issues:

1. Whether the ALJ erred in failing to develop the record by not seeking a functional assessment by a treating or examining physician;

2. Whether the ALJ's credibility analysis of Day is supported by substantial evidence; and

3. Whether the ALJ erred in relying on vocational expert ("VE") testimony at Step Five elicited in response to an incomplete hypothetical question.

(Pl.'s Br. at 1, 12-18.)

### IV.    ALJ DECISION

In his August 12, 2014 decision, the ALJ found that Day met the disability insured status requirements of the SSA through March 31, 2013 and that she had not engaged in any substantial gainful activity since June 25, 2011, the alleged onset date of Day's disability.  (Tr. 12.)  The ALJ further found that Day suffered from the following severe impairments: (1) degenerative joint disease of the right knee, (2) chronic obstructive pulmonary disease ("COPD"), (3) history of congestive heart failure, (4) supraventricular tachycardia, (5) hypertension, and (6) obesity. (Tr. 12-13.)  Next, the ALJ held that none of Day's impairments or combination of impairments met or equaled the severity of any impairment in the Listing.  (Tr. 13-14.)

As to Day's residual functional capacity ("RFC"), the ALJ stated, "After careful consideration of the entire record, the undersigned finds that, through the date last insured, the

4

claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR

404.1567(a) except she is limited to working in dust-free, fume-free, chemical-free, and climate-

controlled environment." (Tr. 14 (emphasis omitted).)   The ALJ found, based on his RFC

assessment, that Day was unable to perform any of her past relevant work. (Tr. 17.)   However,

based upon the testimony of the VE, the ALJ found that Day was capable of performing other

jobs existing in significant numbers in the national economy.   (Tr. 18; *see* Tr. 41-44.)

Accordingly, the ALJ found that Day was not disabled. (Tr. 19.)

### III.   DISCUSSION

#### A. <u>Duty to Develop</u>

In her brief, Day claims that the ALJ's RFC determination is not supported by substantial

evidence because the ALJ had a duty to fully and fairly develop the record by requesting further

additional information from a treating or examining source. (Pl.'s Br. at 12-13.)   Specifically

Day states:

> The decision reveals that the ALJ relied only on his lay interpretation of
> the medical evidence, giving only "some weight" to the non-examining state
> agency physician's opinion, and failing to obtain an opinion from a treating or
> examining source.   Indeed, the ALJ acknowledged that the non-examining
> opinions were outdated and unsupported, noting that additional evidence
> submitted at the hearing level shows Plaintiff is more limited than the physicians
> assessed.   Therefore, these opinions cannot constitute substantial evidence to
> support the ALJ's decision.   In light of the lack of support for the state agency
> opinions, and complete lack of any further medical opinion evidence, the RFC
> determination is not supported by substantial evidence.
>
> . . . .
>
> The plaintiff was prejudiced by the ALJ's failure to develop the record,
> because the RFC determination and the ALJ's analysis of the medical evidence
> show failure to properly consider all of the limitations resulting from Plaintiff's
> impairments.   A medical assessment from an examining or treating source would

5

contain further limitations, and would likely show that she is disabled. For example, the record indicates that Plaintiff's medical impairments result in significant, persistent edema, and she is under medical direction to elevate her legs above her heart throughout the day. Despite the consistent evidence of edema, the ALJ failed to evaluate this associated symptom and the impact it would have on Plaintiff's functional capacity, and failed to explain why no corresponding limitations were included in the RFC. This is prejudicial to the Plaintiff, as the vocational expert testified that the need to elevate one's legs above waist-level would interfere with work productivity and negatively impact her ability to sustain employment.

(Pl.'s Br. at 14-15 (internal citations omitted).)

The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984). The ALJ's duty to fully and fairly develop the record may impose a duty to order an examination of the plaintiff. *See Brock*, 84 F.3d at 728. "An ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination." *Id.*; *see* 20 C.F.R. § 404.1517. "Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09–CV–156–Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220). "To show such prejudice a Plaintiff must present more than mere speculation." *Dale v. Astrue*, No. 83-3542, 2012 WL 2864403, at *7 (July 11, 2012).

In making his RFC determination, the ALJ reviewed the evidence in the record including: (1) records from multiple visits to the emergency room in 2011 and 2012; (2) treatment records from Bhavna Nitin Tanna, M.D. ("Dr. Tanna"), a treating physician; (3) pulmonary functioning testing results from February 2013; (4) February 2013 consultative examination performed by Olawale Akinmerese, M.D. ("Dr. Akinmerese") "at the request of the State agency;" and (5) opinions from state agency medical consultants ("SAMCs"). (Tr. 14-17.) In addition, the ALJ stated:

> Along with evaluating the claimant's subjective allegations and the objective medical evidence in assessing the residual functional capacity, the undersigned has considered the opined limitations set forth by the State agency's medical consultants at the initial and reconsideration levels. Both medical consultants opined that the claimant could perform light work but could only stand and walk in combination for a total of two hours in an eight-hour workday; frequently balance; only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, and scaffolds. The undersigned gives some weight to these opined limitations due to their consistency with the limited evidence available for review by the medical consultants. However, the undersigned finds that evidence received at the hearing level, such as additional treatment notes from the relevant period, supports the more restrictive limitations set forth in the residual functional capacity above.
>
> In conclusion, the undersigned finds that the claimant's subjective complaints and the objective medical evidence support a finding that the claimant's degenerative joint disease of the right knee, COPD, history of congestive heart failure, supraventricular tachycardia, hypertension, and obesity caused some limitation in her ability to perform work-related activity prior to the date last insured. However, the undersigned further finds that the claimant had the ability to perform such activity within the limitations set forth in the residual functional capacity, as supported in part by the opinion evidence of the State agency's medical consultants.

(Tr. 17 (internal citations omitted).)

Contrary to Day's argument, the ALJ did not acknowledge that the record was "outdated and unsupported" when he accorded "some weight" to the SAMC's opinions. (Pl.'s Br. at 13.)

Instead, the ALJ acknowledged that, due to other evidence and additional treatment records in the record that was not available to the SAMCs when they rendered their opinions, the record supported a more restrictive RFC than opined by the SAMCs.[1]  (Tr. 17.)  Based on the other medical evidence in the record, along with the opinions of the SAMCs, the ALJ concluded that Day could perform sedentary work with some environmental restrictions.  (Tr. 14.)  Such evidence constitutes substantial evidence upon which the ALJ can rely on in making his RFC determination.  Consequently, the ALJ did not err in failing to fully and fairly develop the record by requesting an additional examination.

In addition, Day actually was sent to a consultative examiner, Dr. Akinmerese, at the request of the social security administration.  (Tr. 16; see Tr. 340-42.)  The ALJ obviously considered Dr. Akinmerese's opinion in formulating Day's RFC as he specifically discussed such examination.  Moreover, as to Day's edema, the ALJ specifically acknowledged that Day suffered from such impairment, noting several times that the treating and examining physicians recorded edema and/or swelling.  (Tr. 14-17.)  In addition, the ALJ acknowledged Day's testimony that she spends eight to ten hours daily elevating her legs.  (Tr. 14.)  However, the ALJ did not include this limitation in the RFC assessment because this limitation was not supported by the objective medical evidence.  Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (July 2, 1996); see also 20 C.F.R. § 404.1529(c).  While Day cites to a myriad of

---

[1] The SAMCs ultimately opined that Day had the RFC to perform sedentary work. (Tr. 58, 68.) The ALJ, in his decision, incorrectly stated that the SAMCs found that Day was capable of light work. (Tr. 17.) In essence, the ALJ adopted the SAMCs opinions that Day could perform sedentary work and added some environmental restrictions based on other evidence in the record. Any error by the ALJ in characterizing the SAMC opinions was harmless as their opinions, and the other evidence in the record, provides substantial evidence to support the ALJ's RFC determination.

assessment and treatment reports indicating that she suffered from edema (Pl.'s Br. at 15), only one such medical record, which is dated September 2012, states that Day is to "[e]levate legs." (*See* Tr. 320.) However, the directive does not indicate how high or for how long her legs must be elevated. (*Id.*) Furthermore, subsequent medical records do not include any medical directive for Day to continue to raise her legs at all. In fact, in January 2014, treating physician Paul Bhella, M.D., recorded that Day "denie[d] . . . lower extremity edema," and he made no notes regarding edema during the physical examination. (Tr. 540.) Day has not produced or pointed to any evidence in the record which suggests additional functional limitation as a result of her edema beyond those contained in the RFC. Consequently, Day has failed to demonstrate prejudice by showing she could and would have adduced evidence that might have altered the ALJ's RFC determination, and remand is not required.

### B. Credibility Determination

Day also argues that the ALJ's analysis of her credibility regarding her statements of pain, shortness of breath, and edema is not supported by substantial evidence. (Pl.'s Br. at 15-18.) Day claims the ALJ erred as a matter of law in that he did not consider the required factors set forth in 20 C.F.R. § 404.1529(c) when assessing her credibility as to her pain and other symptoms.

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms such as pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20

9

C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *2. A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 404.1529(a).

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 95-5p, 1995 WL 670415, at *2 (S.S.A. Oct. 31, 1995). Credibility determinations by an ALJ are entitled to deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ is in the best position to assess a claimant's credibility since the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir.1994). Nevertheless, the ALJ's "determination or decision regarding credibility must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *4. When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the

Case 4:15-cv-00102-A   Document 20   Filed 01/08/16   Page 11 of 17   PageID 791

symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant

takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication,

which the claimant receives or has received for relief of pain or other symptoms; (6) any

measures other than treatment the claimant uses or has used to relieve pain or other symptoms;

and (7) any other factors concerning the claimant's functional capacity, limitations and

restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL

374186, at *3.

> After setting forth the standards for evaluating a claimant's credibility, the ALJ stated:

> > After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

> > The claimant's longitudinal medical history fails to provide strong support for her allegations of disabling symptoms and limitations. . . .

(Tr. 15; *see* Tr. 14.)

> Contrary to Day's argument, the ALJ did review the required factors set forth in 20

C.F.R. § 404.1529(c) in making his credibility determination. As to factor one, which considers

Day's daily activities, the ALJ specifically went through Day's testimony, stating:

> > Regarding activities of daily living, the claimant stated that she took care of her personal needs with some difficulty, prepared simple meals, sat in a chair to do laundry and wash dishes, and shopped in stores once a month for two hours at a time using an electric chair. She indicated that she went outside once a month and rode in a care [sic] when traveling away from her home. The claimant testified that she last drove a car in the summer of 2012 and she stopped driving because she could not put pressure on the pedals and her arms fell asleep while holding the steering wheel.

(Tr. 15 (internal citations omitted).)  As to factor two, which considers the location, duration,

11

frequency, and intensity of the claimant's pain or other symptoms, the ALJ went through the medical records, discussing Day's lower extremity swelling, fatigue, back spasms, edema, COPD, shortness of breath, hypertension, and pain in the feet, hips, legs, hands, knees, and back. (Tr. 14-17.)  As to factor three, which considers any precipitating or aggravating factors, the ALJ noted that Day stated in May 2012 that movement aggravated her right knee pain. (Tr. 15.)  In addition, the ALJ pointed out that sometimes Day indicated she continued to have swelling in her legs even with medication and that on other occasions the swelling seemed to be controlled with medication. (Tr. 16.)  In addition, the ALJ noted that, in December 2012, Day continued to smoke cigarettes and suffer from shortness of breath. (Tr. 16.)  Also, the ALJ indicated that in February 2013 Day complained of an increased shortness of breath and cough mostly at night and that she had quit smoking following a hospitalization for COPR exacerbation. (Tr. 16.)  The ALJ also pointed out that Day reported using a cane for ambulation "with little benefit" and that she had difficulty lying flat in bed. (Tr. 16.)

As to factor four, which evaluates the type, dosage, effectiveness, and side effects of any medication Day takes or has taken to alleviate pain or other symptoms, the ALJ stated that Day "reported taking various medications, such as ibuprofen, DuoNeb, Proventil, Symbicort, Singulair, and Lasix" to help relieve her symptoms and that Day suffered from mouth sores as a side effect of her COPD medications. (Tr. 14.)   The ALJ discussed that Day received only mild relief from right knee pain with, *inter alia*, non-steroidal anti-inflammatory drugs. (Tr. 15.)  The ALJ further noted that in May 2012 Day reported she had been slightly short of breath since she ran out of Lasix. (Tr. 15.)  The ALJ also indicated several occasions on which Day received refills of her prescriptions and that she took ibuprofen for the pain in her knees and hips. (Tr. 15-

12

16.) In addition, the ALJ noted that, in February 2013, Dr. Akinmerese indicated that Day's hypertension was controlled with medication. (Tr. 17.)

As to factors five and six, which analyzes treatment, other than medication, which Day receives or has received for relief of pain or other symptoms, and any measures other than treatment the claimant uses or has used to relieve pain or other symptoms, the ALJ noted Day's report in February 2013 of using breathing treatments as needed on a daily basis after a hospitalization for COPD exacerbation but that she was not currently on oxygen.[2] (Tr. 16.) The ALJ also considered Day's statements that she used a cane to ambulate, with little benefit. (Tr. 14). In addition, the ALJ discussed that Day stated she received only mild relief from right knee pain with, *inter alia*, rest (Tr. 15) and she elevated her legs eight to ten hours daily to relieve swelling. (Tr. 16.)

Finally, as to factor seven which reviews any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptom, the ALJ noted that Day, while stopping smoking in January 2013, suffered from shortness of breath. (Tr. 16.) In addition, the ALJ, as set forth above, considered Day's edema and other alleged limitations when he formulated the RFC determination.

Based on the foregoing, it is clear in this case that the ALJ properly considered Day's credibility and, contrary to Day's claims, sufficient evidence in the record supports the ALJ's credibility determinations. The Court finds that the ALJ's decision contains an adequate

---

[2] While Day claims she is now on 24-hour oxygen, the medical records Day points to in support indicate that the 24-hour oxygen did not begin until August 2013, which is after her March 31, 2013 date of last insured. (*See* Pl.'s Br. at 17; Tr. 30, 588.)

13

discussion and analysis of the objective medical and other evidence, including Day's complaints of pain or other symptoms and the ALJ's own observations.  For the foregoing reasons, the Court concludes that the ALJ did not err in his credibility determination.

### C.  Step Five and VE Testimony

Day also argues that the ALJ erred in relying at Step Five on VE testimony elicited in response to an incomplete hypothetical question.  (Pl.'s Br. at 18.)  Day's argument is contingent on her preceding argument that, because the ALJ failed to develop the record in regards to her symptoms and limitations and incorporate all of her disabilities into the RFC, the hypothetical question posed to the VE was also incomplete.  (Pl.'s Br. at 18.)   Day claims that, consequently, the ALJ's reliance on the VE's testimony at Step Five is not supported by substantial evidence. (*Id.*)

A VE is called to testify because of his familiarity with job requirements and working conditions.  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)).  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Id.*   In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job."  *Fields*, 805 F.2d at 1170.  "[T]he hypothetical question posed to the vocational expert by the ALJ must 'incorporate reasonably all disabilities of the claimant recognized by the ALJ.'"  *Jones v. Astrue*, 228 F. App'x 403, 408 (5th Cir. 2007) (quoting *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)).

In this case, the ALJ included all limitations that he had found in the RFC determination in the hypothetical question to the VE. (Tr. 14, 42.) The VE then testified that an individual limited to such work could perform, *inter alia*, document scanner, charge account clerk, or inspecting jobs. (Tr. 42-43.) The ALJ relied on this portion of the VE's testimony in finding at Step Five that there were jobs that existed in the national economy that Day could perform. (Tr. 18-19.)

While the VE, when questioned further by Day's attorney, did testify that a person that needed to elevate their legs at waist level or more periodically throughout the day would not be able to be productive during the day, the ALJ did not incorporate such a limitation into the RFC as he did not find it supported by the majority of the evidence in the record, as set forth above. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See, e.g., Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 436 (no reversible error if the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations.) Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" the RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue*, No 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ

15

because question closely tracked ALJ's RFC assessment, which took into consideration all impairments). Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **January 22, 2016** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 8, 2016.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

17